

*149*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAY 0 3 1995

Michael N. Milby, Clerk

| | | |
|---|---|---|
| BARBARA NORTON, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-92-3239 |
| | § | |
| HOUSTON INDUSTRIES | § | |
| INCORPORATED, ET AL., | § | |
| | § | |
| Defendants. | § | |

## SUMMARY JUDGMENT MEMORANDUM

The plaintiffs bring this suit as employees who were terminated from Houston Lighting and Power ("HL&P") based on a reduction-in-force. They bring claims under the Age Discrimination Act ("ADEA") and the Employee Retirement Income Security Act ("ERISA") as well as various state law claims against McKinsey & Company, Inc. ("McKinsey"), a management consulting firm, who provided consulting services to HL&P to allegedly reduce costs in its operations. Before the Court is the defendant's, McKinsey, motion for summary judgment against the plaintiffs (instrument #132). The Court having considered the motion, the response, the pleadings on file, and the

applicable law, is of the opinion that the defendant's motion shall be granted.

## FACTUAL BACKGROUND

In 1991, McKinsey was hired as a management consultant by HL&P. McKinsey trained HL&P personnel to use a process known as Activity Value Analysis ("AVA") to analyze the productivity of its workforce. After applying this process, HL&P and UFI chose to reduce their work force and, consequently, terminated approximately 1,100 workers. The plaintiffs were terminated during the during reduction in force.

The plaintiffs bring this suit against McKinsey under the ADEA, 29 U.S.C. §§ 621-634 (1992), and ERISA, 29 U.S.C. §§ 1001-1461 (1992). Also, the plaintiffs assert state law claims including wrongful discharge under Tex. Rev. Civ. Stat. Ann. art. 8307c (Vernon Supp. 1990) (now codified as Texas Labor Code §§ 401.001 *et. seq.*), breach of contract, conversion, fraud, misrepresentation, conspiracy, intentional infliction of emotional distress, defamation, and false light invasion of privacy.

## CONTENTIONS OF THE PARTIES

McKinsey moves for summary judgment on all of the plaintiffs' claims contending that it had no relationship with the HL&P's employees who were terminated. Its only involvement with HL&P was through the services

2

it provided as a management consulting firm-- namely, how to reduce costs in its operations. McKinsey contends that it had no involvement in judging HL&P's employees or in selecting any specific individuals for termination.

McKinsey moves for summary judgment on the plaintiffs' ADEA, ERISA, and 8307c wrongful discharge claims because the plaintiffs must, and cannot, establish an employer/employee relationship with McKinsey to maintain these claims.

The plaintiffs, on the other hand, contend that the ADEA and ERISA are not limited in their application to employers but apply to "persons" as well. Moreover, they contend that based on consultations with the defendants, and by observing the defendants' employees, McKinsey formulated a plan to lay-off the plaintiffs. They acted as agent for HL&P and UFI in preparing the lay-offs in violation of the ADEA and ERISA.

Additionally, McKinsey moves for summary judgment on the plaintiffs' state law claims for: (a) breach of contract--because it had no contract with the plaintiffs; (b) conversion--because it did not covert funds allegedly owed to the plaintiffs; (c) fraudulent inducement--because it did not fraudulently induce the plaintiffs into accepting the severance plan and executing the releases; (d) fraud--because it made no representations to the

3

plaintiffs; (e) conspiracy--because it did not commit an unlawful act; (f) intentional infliction of emotional distress--because the plaintiffs failed to allege and cannot establish that McKinsey committed any affirmative acts made the basis of this claim; (g) false light publicity--because it is not a recognized cause of action in Texas; and (h) defamation--because McKinsey made no statements about the plaintiffs.

## DISCUSSION AND AUTHORITIES

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if after reviewing the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). After viewing the evidence in a light most favorable to the non-movant, summary judgment is appropriate if the Court concludes that a reasonable fact-finder could not return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Court turns to McKinsey's motion for summary judgment on the plaintiffs' ADEA, ERISA, and 8307c wrongful discharge claims. McKinsey

4

properly contends that in order to maintain these claims, the plaintiffs must establish an employer/employee relationship.[1] Consequently, the seminal question is whether an employer/employee relationship existed between the plaintiffs and McKinsey so that the plaintiffs may bring these causes of actions.

The Fifth Circuit has enunciated three tests to determine whether an employment relationship exists for purposes of the plaintiffs' claims, to-wit: (1) the common law agency test; (2) the economic realities test; and (3) the hybrid test which combines elements of both the common law agency and the economic realities tests (hybrid economic realities/common law control test). *See Hickey,* 699 F.2d at 751. The common law agency test is applied in determining whether an employment relationship exists for an ERISA claim. *Darden,* 112 S.Ct. at 1348. This test is also applied in wrongful discharge claims under 8307c. *Thompson v. Travelers Indem. Co. of Rhode Island,* 789 S.W.2d 277, 278 (Tex. 1990). The primary focus of the common law agency test is the hiring party's right to control the manner and means by which the product or task is accomplished. *Darden,* at 1348.

---

[1] *Hickey v. Arkla Indus., Inc.,* 699 F.2d 748, 753 (5th Cir. 1983) (a plaintiff must be an employee to have a cause of action under ADEA); *Nationwide Mt. Ins. Co. v. Darden,* 112 S.Ct. 1344, 1347 (1992) (a plaintiff must be an employee to maintain an ERISA claim); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128 (5th Cir. 1992), *cert. denied,* 113 S.Ct. 136 (1992) (neither a wrongful discharge suit nor an employment discrimination suit can be brought under Article 8307c in the absence of an existing employee/employee relationship).

No such relationship existed between the plaintiffs and the defendant. McKinsey's sole role was to provide consulting services to HL&P. The record evidence evinces that McKinsey never controlled the employees or the actions taken by HL&P management. Accordingly, the Court grants McKinsey's motion for summary judgment on these claims.

Relatedly, the Fifth Circuit holds that hybrid economic realities/common law control test is applied in determining whether an employment relationship exists for ADEA claims. *Barrow v. New Orleans Steamship Association,* 10 F.3d 292, 296 (5th Cir. 1994). The Circuit states, "The right to control an employee's conduct is the most important component of this test.... When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.... The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* at 296.

As acknowledged earlier, McKinsey did not exercise control over the plaintiffs. Additionally, the record reveals that McKinsey's involvement in

6

this case was limited to providing consultation services to HL&P. Obviously, this does not satisfy the economic realities component of the hybrid test. Accordingly, the Court grants summary judgment on the plaintiffs' ADEA claim lodged against McKinsey.

Alternatively, the plaintiffs contend that McKinsey was an agent of their employer. This specious argument does not bring the plaintiffs into an employment arrangement with McKinsey. The fact that McKinsey was an agent of the plaintiffs' employer with respect to employment practices does not elevate McKinsey's role to one of employer. Again, McKinsey did not select employees for termination or participate in any other way in the terminations.

The Court examines McKinsey's motion for summary judgment on state law claims *en seriatim*. In assaying the various state law claims lodged against McKinsey, the Court is mindful that McKinsey's role is limited to that of providing consulting services to HL&P.

McKinsey moves for summary judgment on the plaintiffs' breach of contract claim. It is axiomatic that there can be no breach of contract without there first being a valid, contractual agreement between the parties. *Neff v. World Pub. Co.,* 349 F.2d 235, 236 (8th Cir. 1965). Because the record is bereft of any agreement existing between McKinsey and any of the plaintiffs,

7

the Court grants summary judgment on this claim.

Next, McKinsey moves for summary judgment on the plaintiffs' conversion claim, which is premised on the exclusion of eight weeks of severance pay. Conversion is defined as the unauthorized and wrongful exercise of dominion, ownership, or control over the personal property of another, to the exclusion of and inconsistent with the owner's rights. *In re Moody,* 899 F.2d 383, 385 (5th Cir. 1990). McKinsey, as a consultant, was not involved in the distribution of severance funds. Moreover, the record evinces that McKinsey did not, nor did it have the opportunity to, exercise dominion or control over such funds. Accordingly, the Court grants summary judgment on this claim.

The plaintiffs also claim that they were fraudulently induced into accepting the severance plan and accepting the release based on misrepresentations concerning benefits to be received under the Plan and the reasons given for the plaintiffs' terminations. McKinsey is entitled to summary judgment on this claim because the record is devoid of any representations made to the plaintiffs, whatsoever.

In addition, the plaintiffs assert claims for fraud, misrepresentation, and conspiracy relative to their terminations. In pertinent part, they contend

8

that the defendants made false statements concerning the profitability as an excuse for the company's downsizing; employed a fraudulent scheme to evaluate the employees ultimately targeted for termination; hired other persons for the positions from which the plaintiffs were terminated; and conspired to lay-off the plaintiffs through fraudulent rankings.

For the same reasons expressed above, these claims fail. HII, HL&P, and UFI made the ultimate decision to terminate the plaintiffs. More importantly, it was their sole decision to terminate the plaintiffs. McKinsey's only involvement with respect to these companies' employment practices was in the capacity of a consultant. Thus, it cannot be said that any fraud, misrepresentation, or conspiracy claims arise out of the plaintiffs' terminations with respect to McKinsey. The Court grants summary judgment on these claims.

McKinsey moves for summary judgment on the plaintiffs' intentional infliction of emotional distress because the plaintiffs failed to allege and cannot establish that McKinsey committed any affirmative acts made the basis of this claim. McKinsey properly contends that it did not intentionally or recklessly act to inflict emotional distress on the plaintiffs because it did not terminate the plaintiffs. Further, McKinsey points out that it played no role

9

in evaluating or selecting individuals who were terminated. The record supports McKinsey and the Court grants summary judgment on this claim.

The Court also holds that the defendant's motion for summary judgment on the plaintiffs' claim for false light invasion of privacy are sound. The defendants correctly rely on *Cain v. Hearst d/b/a The Houston Chronicle Co.*, 878 S.W.2d 577 (Tex. 1994), to support their contention that Texas law does not recognize such a claim. In that case, the Texas Supreme Court, on certified question from the Fifth Circuit, held that Texas does not recognize a tort of false light invasion of privacy. Accordingly, the Court grants the defendant's motion on this claim.

Lastly, the Court examines the plaintiffs' defamation claim. The plaintiffs contend that they were described as "poor performers" to the news media, to other company employees, and to employees of other companies. The Court finds the plaintiffs' defamation claim untenable.

Texas law holds that to prove defamation, the plaintiff must show: (1) a statement that either injures the plaintiff's reputation and thereby exposes the plaintiff to public hatred, contempt or ridicule, or financial injury; or impeaches the plaintiff's honesty and integrity, virtue, or representation; (2) was published to a third person, and (3) the third person understood the words

10

to be defamatory.  Tex. Civ. Prac. & Rem. Code § 73.005.  Save and except for the plaintiffs' conclusory allegation, the record is bereft of any statements published by McKinsey.

Even assuming, *arguendo,* that McKinsey told a third person that the plaintiffs were "poor performers," such a statement does not rise to the level of a defamatory statement.  *See Shauer v. Memorial Care Systems,* 856 S.W.2d 437, 446 (Tex. App.--Houston [1st Dist.] 1993, no writ).  Accordingly, the Court grants summary judgment on the plaintiffs' defamation claim.  For these reasons, the defendant's motion for summary judgment is Granted to the extent set forth herein.

It is so ORDERED.

Signed this 1st day of May, 1995.


KENNETH M. HOYT
United States District Judge

11